**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

January 8, 2020

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Magistrate Judge Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    **Re:**    *Chavez Melchor v. 228 Bleecker LLC, et al.,*
              **Civil Action No. 18-cv-10527 (KHP)**

Dear Judge Parker:

    This office represents named plaintiff Jorge Chavez Melchor ("Chavez" or the "Named Plaintiff") and six opt-in plaintiffs[1] (the "Opt-In Plaintiffs" and, collectively with the Named Plaintiff, the "Plaintiffs") with respect to their claims against 228 Bleecker LLC. d/b/a Aria West Village, Briciola Corp. (together with 228 Bleecker LLC, the "Corporate Defendants"), Roberto Passon ("R. Passon"), Tanya Hira Passon ("T. Passon"), and John Does # 1-6 (together with R. Passon and T. Passon, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants"). We write, with the consent of counsel for Defendants, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). We respectfully submit that the attached negotiated Settlement Agreement and Wage and Hour Release ("Settlement Agreement") (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**    **Procedural History and Plaintiffs' Allegations**

    The Named Plaintiff commenced this action on November 13, 2018 by filing a Class and Collective Action Complaint against Defendants in the Southern District of New York, alleging violations of the FLSA and New York Labor Law, §§ 650 *et seq*. ("NYLL"). (*See generally* Dkt. No. 1). On November 15, 2018, the matter was referred to Your Honor for settlement purposes by District Judge Jesse M. Furman. (Dkt. No. 12). The parties held an initial telephone conference with Your Honor to discuss timing and scope of potential settlement negotiations. Defendants filed their Answer to the Complaint on January 3, 2019, denying all material allegations. (Dkt. No. 23).

---

[1] During the mediation, Plaintiffs' counsel learned that Opt-in Plaintiff Syed Haque no longer wished to participate in the litigation. After advising Mr. Haque about his right to opt-out and the consequences of his decision and confirming that his decision was voluntary, Plaintiffs' counsel accordingly prepared a handwritten opt-out statement on his behalf, which was filed on January 6, 2020. (Dkt. No. 48).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

The court held a follow up telephone conference with the parties on March 11, 2019, wherein the parties discussed their intention to negotiate sending collective action notice prior to engaging in settlement negotiations through mediation. On March 12, 2019, the parties filed their consent to proceed before Your Honor for all purposes. (Dkt. No. 27). On March 21, 2019, the parties filed a stipulation and proposed order consenting to the conditional certification of an FLSA collective action and sending of notice to the FLSA collective action members, which was granted that same day. (*See* Dkt. No. 30, 31). Pursuant to the notice, five (5) individuals exercised their right to join the action by mailing in their signed "Consent to Become a Party Plaintiff" form to Plaintiffs' counsel prior to the May 21, 2019 opt-in deadline.[2] Two (2) additional collective action members later joined the action.[3]

On April 1, 2019, Plaintiffs served on Defendants' counsel interrogatories, document demands and Rule 26(a)(1) disclosures, including certain paychecks, clock-in/clock-out records, and time sheets Named Plaintiff received from Defendants. Defendants produced documents for all Plaintiffs except Miguel Estrada, which included time cards showing the time-in and time-out recorded for Plaintiffs for their respective employment periods, and "Employee Earning Records" listing Plaintiffs' regular wage, withholdings, and net pay.

The parties subsequently participated in a full-day mediation before Christopher M. Mason, Esq. of the SDNY Mediation Program on November 26, 2019, during which they were able to reach a settlement on behalf of the Named Plaintiff and Opt-In Plaintiffs, the terms of which were included in a settlement term sheet (the "Term Sheet"). From that Term Sheet, over the course of the next several weeks, the parties negotiated the remaining terms of the settlement, which are memorialized in the attached Settlement Agreement (**Exhibit A**).

## II.   The Settlement Accounts for Litigation Risk

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Fundamentally, the parties dispute the number of hours that Plaintiffs worked and the consistency of Defendants' pay practices across its various restaurant locations. Plaintiffs worked for Defendants in various positions for varying lengths of employment during the relevant statutory period. For their work, Plaintiffs allege that they were all paid a straight-time hourly rate for all hours for which they received compensation, regardless of which restaurant location they worked in.

---

[2] Dkt. No. 32: Syed Haque's Consent to Become a Party Plaintiff was filed on May 10, 2019; Dkt. No. 33: Mohammad Kamal Hayder's Consent to Become a Party Plaintiff was filed on May 22, 2019; Dkt. No. 36: Antonio Ortega's Consent to Become a Party Plaintiff was filed on June 4, 2019; Dkt. No. 37 Juan Quino Chicoj's Consent to Become a Party Plaintiff was filed on June 28, 2019; Dkt. No. 38 Humberto Fuentes' Consent to Become a Party Plaintiff was filed on July 3, 2019.

[3] Dkt. No. 40: Carlos Mejia's Consent to Become a Party Plaintiff was filed on October 1,2019; Dkt. No. 41: Miguel Estrada's Consent to Become a Party Plaintiff was filed on October 1, 2019. Defendants consented to the late filing of their Consent forms, for settlement purposes only.

The parties exchanged various documents, including timesheets and payroll records for most of the Plaintiffs, which Plaintiffs contend expose Defendants' unlawful pay practices. Defendants produced several time cards showing the time-in and time-out recorded for Plaintiffs for their respective employment periods, and "Employee Earning Records" listing Plaintiffs' regular wage, withholdings, and net pay. It is Plaintiffs' position that Defendants' records are incomplete and do not reflect the total number of hours that Plaintiffs worked throughout their respective employments.

Across the board, Plaintiffs alleged that they received a straight-time hourly rate for all hours for which they received compensation, including hours worked in excess of forty (40) in a week, such that they did not receive overtime premiums of one and one-half (1.5) times their regular hourly rates. Plaintiffs allege that they received an hourly rate that ranged between seven dollars and fifty cents ($7.50) and ten dollars and fifty cents ($10.50) for all hours worked, which frequently fell below the statutory minimum wage. Plaintiffs also allege that they did not receive any additional compensation such that they were not paid spread-of-hours premiums of one (1) hour of the applicable minimum wage for each day that Plaintiffs worked shifts of more than ten (10) hours.

Defendants vigorously dispute Plaintiffs' allegations and assert that Plaintiffs were paid appropriately for all hours worked as reflected in their payroll records, and that the time cards accurately reflect all of the hours actually worked by Plaintiffs.

Additionally, Plaintiffs alleged that the paystubs that they received with their weekly pay were inadequate under the NYLL because they did not reflect Plaintiffs' hours worked or their hourly rate. For each weekly pay period, Plaintiffs also received time cards indicating their hours worked per day, their weekly wages, and sometimes the location worked. At times, Plaintiffs' time cards reflect an "adjustment of hours" from previous pay periods where hours were missing, with no clear indication of how they were allocated or compensated across pay periods. Defendants dispute that the hours reported on the paystubs are inaccurate in any way and dispute that Plaintiffs were not provided notice regarding their rates of pay.

Although it is Plaintiffs' position that Defendants' time records are inaccurate, Plaintiffs recognize that the fact that Defendants are in possession of time and pay records provides a steep obstacle to succeeding on their claims and that these documents could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' records in their entirety. Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after trial. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiffs' FLSA claims, but also their pendent state law claims.

Upon reviewing Defendants' document production, Plaintiffs computed a damages analysis incorporating Defendants' time records and relying on Plaintiffs' best estimates of the hours worked where no records were produced. Plaintiffs' damages analysis for purposes of the mediation resulted in a total damages amount of $568,835.81, including "actual" damages and any

Magistrate Judge Katharine H. Parker
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **4** of **7**

damages owed for wage notice and wage statement violations, as well as liquidated damages under the FLSA and NYLL and statutory interest on the NYLL claims at 9% per annum.

During the Mediation, the parties engaged in good-faith, arm's-length settlement negotiations. The parties reviewed Plaintiffs' damages analysis and discussed any disputed amounts where the calculations were based on Plaintiffs' best estimates and where no records were produced. The parties also agreed to exclude Syed Haque's damages from the final settlement amount, given his decision to opt-out from the case. Plaintiffs updated their damages analysis per these discussions, which resulted in $52,670.38 in unpaid minimum wages, $125,175.79 in unpaid overtime premiums and $36,340.61 in unpaid spread-of-hours premiums, for a total of $214,186.78 in "actual" wage damages. When Plaintiffs' damages for wage notice and wage statement violations, as well as liquidated damages under the FLSA and NYLL and statutory interest on the NYLL claims at 9% per annum were added to Plaintiffs' "actual" wage damages, the alleged damages resulted in a total amount of $518,760. 85.

Given the above, the settlement amount (i.e., $300,000.00) represents full compensation of the "actual" unpaid wages calculated from Plaintiffs' analysis, which would be the anticipated recovery if Plaintiffs had received a favorable outcome at trial under both federal and state law. While it does not compensate Plaintiffs for all of their liquidated damages, penalties, and attorneys' fees in addition to the damages, the parties believe that this is a fair and reasonable recovery based on the risks associated with proceeding to trial.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $300,000.00 (the "Settlement Amount"). Of that amount, $100,609.61 is payable to Plaintiffs' counsel (including $914.57 in expense reimbursements and $99,695.14 in attorneys' fees). The remaining $199,390.39 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180

n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) First, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

**IV.   Plaintiffs' Attorney's Fees and Expenses**

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (**Exhibit B**), as of January 8, 2020, Plaintiffs' counsel has spent more than 172 hours in prosecuting and settling this matter, resulting in a lodestar of $50,659.99. Plaintiffs' counsel has spent $914.57 in actual litigation costs. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $100,609.61) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.98 multiplier of the lodestar and is consistent with what was agreed

upon between the Plaintiffs and their counsel in their retainer agreements. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District. *See Hall v. Prosource Tech*s., LLC, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V.     The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiffs' claims and disputed issues and did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including a full-day mediation session with Christopher M. Mason, during which the Parties discussed Plaintiffs' calculated damages and made reasonable revisions where there was dispute over Plaintiffs' alleged hours worked or any allocated damages amounts. Additionally, Plaintiffs are former employees of Defendants so the fear of possible coercion is not at issue here. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case

unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\*   \*   \*   \*   \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. Therefore, the settlement is completely fair, reasonable, and adequate to the Plaintiffs and we respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

  */s/ Brent E. Pelton*_____

Brent E. Pelton, Esq. of
PELTON GRAHAM LLC

Enclosure

cc:   All counsel (via CM/ECF)